UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

    Plaintiff,

vs.                                            CASE NO. 12-20043

ARTHUR PAYTON                        HON. LAWRENCE P. ZATKOFF

    Defendant.
_____/

**<u>OPINION AND ORDER</u>**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 29, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on the Government's Motion *in limine* to Admit Rule 404(b) Evidence [dkt 52]. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L. R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, the Government's Motion is GRANTED.

**II. BACKGROUND**

The First Superseding Indictment ("Indictment") charges Defendant Arthur Payton ("Payton") with aiding and abetting four bank robberies during October and November of 2011 and also with conspiracy to commit bank robbery. The Government intends to prove at trial that Payton organized and coordinated the robberies and that he recruited Defendant Nancy Barta ("Barta"), who, according

to the Government is a drug-addict and prostitute, to physically rob the banks. According to the Government, Payton: promised Barta $1,000 per bank robbed; handled all of the planning for the robberies; scouted the banks; established escape routes and "rendezvous" locations; provided Barta with a disguise for each robbery (wig, sunglasses, large sweatshirt, gloves and a large bag); dropped Barta off about one block away from the bank; told Barta what to do once she was inside the bank; drafted the demand notes used in the robberies; reunited with Barta at the agreed upon rendezvous point where he received the money; and divided up the proceeds as he saw fit.

Payton has twice been convicted of bank robbery/aiding and abetting prior to this case. On June 2, 2004, Payton pleaded guilty in this Court (before Judge Hood) to seven counts of bank robbery/accessory in violation of 18 U.S.C. §§2113(a) and 2 ("2002 Robberies") and received a 120 month sentence. During a confession to law enforcement officials and his subsequent plea colloquy, Payton admitted that: (1) he met and recruited female drug-addicted prostitutes in need of money to rob the seven banks; (2) he met them on Michigan Avenue and/or Grand River Avenue in Detroit; (3) he told them a story to make them believe that robbing banks was not risky and promised them $1,000 for each bank robbed; (4) he drove each of the women to the banks for the robberies; (5) he provided the women with disguises; (6) he gave them instructions on what to do once inside the bank; and (7) he was responsible for dividing up the proceeds between himself and each of the women. *See* Dkt. 52, ex. 2–4. Two of the banks Payton robbed in 2002 are the exact same banks involved in the instant charges, although now with different names.

The first of the 2002 Robberies took place less than six months after Payton began his term of supervised release following another conviction for substantially similar conduct in connection with six bank robberies that occurred in San Diego, California in 1993 ("1993 Robberies"). Like the women recruited for the 2002 Robberies the women whom Payton recruited to execute the 1993 Robberies

2

were drug-addicted prostitutes. Payton received a 120 month sentence on January 31, 1994. Following his conviction in the 1993 Robberies, Payton wrote to Oprah Winfrey, convincing her to put him on her show (on an episode titled "Women Coerced into Robbing Banks"). The three women Payton recruited for the 1993 Robberies also appeared on the show.

At trial, the Government plans to offer evidence of the 1993 and 2002 Robberies by way of: (1) testimony from Victor Lauria of the Novi Police Department, who will testify with respect to the 2002 Robberies and Payton's statements made in connection with them; (2) Payton's signed admission and a portion of his June 2, 2004, plea colloquy; and (3) testimony from Brett Leatherman, the case agent involved in the 1993 Robberies, regarding the statements Payton made on the Oprah Winfrey show.

### III. LEGAL STANDARD

Federal Rule of Evidence 404(b) allows the Government to introduce evidence of "other crimes, wrongs, or acts" committed by the defendant so long as the evidence is not used merely to show propensity and if it "bears upon a relevant issue in the case." *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000). The Rule contains a non-exhaustive list of possible purposes: "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Such evidence "is not admissible to prove the character of a person in order to show action in conformity therewith." *Id*.

Before admitting evidence under Rule 404(b), the Court must first make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. *United States v. Bell,* 516 F.3d 432, 441 (6th Cir. 2008) (quoting *United States v. Lattner,* 385 F.3d 947, 955 (6th Cir. 2004)). Next, the Court uses a four-step inquiry to determine admissibility: (1) the proponent of the evidence must identify the specific purpose of the "other acts" evidence; (2) the district court must decide whether the identified purpose is at issue in the case; (3) if the purpose is at issue, the

district court must weigh the probative value against the danger of unfair prejudice; and (4) if the district court admits the evidence, it must then clearly instruct the jury as to the specific purpose for which the jury may consider the evidence. *United States v. Merriweather*, 78 F.3d 1070, 1076–77 (6th Cir. 1996).

## IV. ANALYSIS

The Government seeks to admit evidence of Payton's past convictions ("Prior Acts") to show Payton's modus operandi and common plan. Additionally, because the Government must establish Payton's intent and/or knowledge to convict him of each of the five Counts charged in the Indictment, the Government seeks to admit the evidence to show Payton's intent/knowledge.

### A. OCCURRENCE OF THE PRIOR ACTS

A threshold matter for the Court is whether there is sufficient evidence to show that Payton committed the Prior Acts. *Bell,* 516 F.3d at 441 (quoting *Lattner,* 385 F.3d at 955). The Government satisfies this burden if a jury can reasonably conclude that the Prior Acts occurred and that Payton was involved. *Id.* (citing *Huddleston v. United States,* 485 U.S. 681, 689 (1988)).

The Court finds that there is sufficient evidence to support a jury finding that Payton was involved in the Prior Acts. Payton confessed to law enforcement, pleaded guilty, and described his involvement in and accepted responsibility for the Prior Acts. This is sufficient for a reasonable jury to find that Payton committed the Prior Acts, especially when considering that the standard for a reasonable jury to make such a finding is less than a preponderance of the evidence. *See Huddleston*, 485 U.S. at 689 (noting that the standard for a jury to conclude a defendant's involvement with the prior acts is lower than a preponderance standard). The Court thus finds that a jury could reasonably find that Payton committed the Prior Acts. The Court turns next to the four-step analysis articulated by the Sixth Circuit in *Merriweather*.

**B. SPECIFIC PURPOSE OFFERED BY THE GOVERNMENT**

The Government argues that the Prior Acts evidence is offered to show Payton's modus operandi and common plan, and to show Payton's intent and knowledge. Thus, the Government has identified specific purposes—other than character—for which it seeks to admit the Rule 404(b) evidence.

**C. WHETHER THE GOVERNMENT'S SPECIFIC PURPOSES ARE "AT ISSUE" IN THIS CASE**

Rule 404(b) is an inclusionary, rather than exclusionary, rule, *United States v. Blankenship,* 775 F.2d 735, 739 (6th Cir. 1985), thereby generally allowing "other act" evidence other than to show character. Federal Rules of Evidence 401 and 402 establish the broad principle that relevant evidence—evidence that makes the existence of any fact at issue more or less probable—is admissible unless the Rules provide otherwise. *Huddleston*, 485 U.S. at 686. *See also, United States v. Feinman,* 930 F.2d 495, 499 (6th Cir. 1991) ("To determine whether the proffered evidence is admissible for a proper purpose, the trial court must decide, 'whether the evidence is probative of a material issue other than character.'" (quoting *Huddleston,* 485 U.S. at 686)).

The Court now turns to the question of whether the purposes for which the Government seeks to admit the Prior Act evidence are "at issue," *i.e.*, probative of a material issue other than character.

*1. Intent/Knowledge*

When a defendant is charged with a specific intent crime, 404(b) evidence is admissible to prove intent, subject to the probative/prejudicial balancing of Fed. R. Evid. 403. *United States v. Johnson,* 27 F.3d 1186, 1192–93 (6th Cir. 1994). Payton argues that the 404(b) evidence should not be admitted to show intent or knowledge because the Prior Acts are factually dissimilar to the instant case.

In this case, Payton has been charged in Count I with Conspiracy to Commit Bank Robbery, and in Counts II – V with Aiding and Abetting Bank Robbery. All Counts, however, require proof of

5

Payton's intent and/or knowledge. As to Count I, the Government must show that Payton knowingly and intentionally participated in the conspiracy. As to Counts II – V, the government must establish that Payton intended to commit or help with the commission of bank robbery.

Since intent and knowledge are essential elements of the charges that the Government must prove, evidence of prior similar conduct is relevant to show intent since "as a matter of logic, it is at least marginally more likely that [Payton acted] intentionally if he had previous experience" with the same or similar conduct. *United States v. Staten*, 181 F. App'x 151, 155 (3d Cir. 2006). Here, Payton's prior convictions for a scheme whereby he solicited a female to rob a bank, organized the crime, provided a disguise, instructed the female what to do once inside the bank, and coordinated drop-off and "rendezvous" points, presents circumstances substantially similar to the charges in the instant case. As such, the Prior Act evidence is directly relevant to knowledge and intent—it shows that Payton had previously used the particular bank robbery scheme allegedly used in the instant case and that he therefore had the requisite knowledge and intent to commit the crimes in the manner charged in the Indictment. *See Staten*, 181 F. App'x at 155.

As such, the Government has articulated a permissible purpose, other than character, for admitting the evidence, and such purpose is relevant to the contested issues of intent and knowledge. *See United States v. Zelinka*, 862 F.2d 92 (6th Cir.1988) (excluding 404(b) evidence because the government "failed to articulate any theory of admissibility."); *United States v. Bakke*, 942 F.2d 977 (6th Cir.1991) (excluding 404(b) evidence because neither intent, knowledge, nor any related question was a disputed issue.).

### 2. *Plan/Method of Operation*

The Government also offers the existence of a plan or method of operation, common to both the Prior Acts and the instant case, as a material purpose for which to admit the Prior Acts evidence.

6

The Government's argument is well-taken. There is significant similarity between the current charges against Payton and his involvement in the 1993 and 2002 Robberies. At the most basic level, the previous robberies and the charges in the Indictment involve Payton's use of an intermediary to perform the physical act of robbing banks. More notable, however, are the details of the method Payton used in the 1993 and 2002 Robberies and the method he is alleged to have used in the instant case.

In the 1993 and 2002 Robberies, Payton performed the following acts: recruited women; had the women dress in a disguise he provided; dropped the women off a short distance from the targeted bank; established "rendezvous" points at which to reconvene with the women following the robbery; and drafted the demand notes used by the women to commit the robbery.

In this case, the Government alleges that Payton followed precisely the same formula. In fact, Government points out that Payton recruited Barta from exactly the same street that he recruited at least one other female accomplice in connection with the 2002 Robberies. Moreover, two of the banks robbed in this case are the exact same banks—albeit now with different names—that Payton was convicted of robbing in 2002.

Based on these similarities, the Court finds that a jury could reasonably find it more likely that Payton robbed/aided and abetted the robbing of the banks in this case in a manner consistent with his previous convictions.

In his response to the Government's motion, Payton denies any link between his prior convictions and the charges in the Indictment, stating as follows:

> [t]hat 2 individuals plan and participate in bank robberies is not necessarily so novel or unusual as to amount to admissible 404(b) evidence of a particular "scheme" or "modus operandi", as the government contends. Indeed, that is a quite common approach to bank robbery, as well as many other crimes, which are, in fact, run-of-the-mill offenses heard in courts across the country on a daily basis. One person plans, and the other participant actually enters the bank with the aid of the planner: not so unique.

7

The Court disagrees and finds Payton's characterization of the robberies overly simplistic.

The similarity between Payton's prior conviction and the current charges is not limited to "one person plans, another acts," as Payton would contend. There are countless methods that two conspirators could use to rob a bank—one could keep watch while the other goes to the teller; both could go to the teller; one could wait outside and drive a "getaway" car; they could use a motorcycle; they could use a bomb, a gun, or a knife; they could omit the disguise and instead wear a ski mask. Despite this, the Prior Acts and the charges in this case all follow a particular scheme. The scheme—recruitment of a female with drug problems, dropping off the robber a short distance from the bank, use of a disguise, use of a "demand note," reconvening at a "rendezvous point" where the robber later turns the money over to the planner, the planner allocating whatever portion of the money he sees fit to the robber—is far from "run-of-the-mill." *See United States v. Benton,* 852 F.2d 1456, 1467 (6th Cir. 1988) ("[T]he prior acts need not duplicate exactly the instant charge, but need only be sufficiently analogous to support an inference of criminal intent.").

Therefore, the relationship between the 1993 and 2002 Robberies and the current charges cannot be written off as mere coincidence.

Having thus found that permissible purposes for the Prior Act evidence exist, the Court turns next to the issue of whether the probative value of the evidence is outweighed by its prejudicial effect.

### D. Balancing Probative Value and Prejudicial Effect

When balancing the prejudice and probative value of 404(b) evidence, the Court considers the following four factors: (1) whether the other act evidence is unduly prejudicial; (2) the availability of a limiting instruction; (3) the availability of other means of proof; and (4) when the other acts occurred. *See Myers,* 123 F.3d at 363–64.

    1. *Whether the Evidence is Unduly Prejudicial*

8

"Unfair prejudice" is an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. Ad. Comm. Notes to Fed. R. Evid. 403. The Court acknowledges that the Prior Act evidence will be prejudicial if introduced against Payton at trial. The Court notes, however, that "[e]vidence that undermines one's defense by virtue of its 'legitimate probative force' does not *unfairly* prejudice the defendant." *United States v. Holden,* 557 F.3d 698, 705 (6th Cir. 2009) (quoting *United States v. Schrock,* 855 F.2d 327, 335 (6th Cir. 1988)) (emphasis added). Thus, the proper question is whether this evidence is *unduly* or *unfairly* prejudicial.

The Court finds that the Prior Acts evidence does not create undue or unfair prejudice. The evidence is highly probative of Payton's involvement in the current charges by showing: Payton's intent to participate in the scheme; his knowledge of the scheme's existence; his "know-how" of the particular scheme used; and his ability to execute the scheme. While the possibility exists that a jury might be tempted to consider this evidence for an improper purpose, this risk can be minimized with a limiting instruction. As such, this factor, in combination with factor two, discussed next, weighs in favor of allowing the Prior Acts evidence.

*2. Limiting Instruction*

A defendant is less likely to prevail on his claim that evidence of other bad acts unfairly prejudiced him where a limiting instruction given by a trial court "correctly focuse[s] on [permissible purposes.]" *Myers*, 123 F.3d at 364. Here, a limiting instruction is available to clearly, simply, and correctly instruct the jury that the Prior Act evidence may be considered only for the purposes of showing intent, knowledge, and common plan, thereby ensuring "that [the evidence] is utilized as intended." *Johnson,* 27 F.3d at 1193. The jury can be reasonably expected to comply with the limiting instruction. *See Richardson v. Marsh*, 481 U.S. 200, 210 (1987); *Murray v. Superintendent, Kent. State Penitentiary*, 651 F.2d 451, 453 (6th Cir. 1981) ("A jury is presumed to heed an instruction directing it not to consider a defendant's prior criminal record as evidence in guilt.") (citations omitted)). Therefore

9

the Court can minimize the risk of unfair prejudice to Payton by giving a limiting instruction on the permissible purposes for which the Prior Acts evidence is admitted. *See Zafiro v. United States,* 506 U.S. 534, 540 (1993); *United States v. LaFlam*, 369 F.3d 153, 157 (2d Cir. 2004) (holding, in an armed robbery case, that the district court did not abuse its discretion in admitting evidence of the defendant's uncharged drug use because the district court properly balanced probative value against prejudice and "also gave a limiting instruction to the jury that reduced any potential prejudice that introduction of the uncharged other act evidence might have caused").

### 3. Availability of Other Means of Proof

Payton is charged, in all five Counts, with specific intent crimes. With respect to specific intent crimes, "prior acts evidence may often be the only method of proving intent." *Johnson,* 27 F.3d at 1192 (citing *United States v. Ring*, 513 F.2d 1001 (6th Cir. 1975)). The parties, however, do not indicate the availability of other means of proof, and based on the limited information provided to the Court, the existence of any such means is not presently determinable. As such, this factor weighs slightly in favor of permitting the Prior Acts evidence.

### 4. When Prior Acts Occurred

With respect to the temporal proximity contemplated by the fourth *Myers* factor, the rule is that the prior acts must be reasonably near in time under the facts of the particular case. *See Ismail*, 756 F.2d at 1260 (citations omitted). Here, the Court finds that the amount of time between the current charges and the 1993 and 2002 Robberies—approximately 19 and 10 years, respectively—is not so long as to outweigh the probative value of Payton's involvement in those robberies. Most relevant to this determination is the fact that the Prior Acts evidence is otherwise permissible in connection with several issues material to this case—Payton's specific intent to commit the charged offenses; his guilty knowledge of the crimes; and the existence of a common plan or method of operation.

10

The mere fact that the Prior Act occurred approximately ten or twenty years ago does not diminish its probative value. Where the other act evidence is "substantially similar to, and near in time to, the offense charged in the indictment," the evidence may be admitted. *Ismail*, 756 F.2d at 1259. As previously discussed, the Prior Acts show significant resemblance to the charges in this case. Thus, the Court's determination of this factor hinges on whether the Prior Acts were near enough in time to the current charges to warrant admission.

There is no absolute maximum number of years that may separate a prior act and the offense charged. *Ismail*, 756 F.2d at 1260 (citing *United States v. Rubio-Gonzalez,* 674 F.2d 1067, 1075 (5th Cir. 1982) (ten-year old conviction admitted); *Foley,* 683 F.2d at 278 (eleven-year old conviction admitted under Rule 404(b)); *United States v. Beamus*, 110 F. App'x 513 (6th Cir. 2004) (16-year old conviction). In this regard, the Court notes that the 19-year old conviction cannot be viewed in isolation. The significance of the 19-year duration is mitigated by the simple fact that the 1993 Robberies were only nine years from the nearly identical 2002 Robberies—which were only ten years from the current charges. Viewing the 1993 and 2002 Robberies as a chain, the Court finds them close enough in proximity to this case to not preclude admission. Thus, this factor weighs in favor of allowing the Prior Acts evidence.

Having considered the Government's specific purposes for introducing the Prior Act evidence and performed the analysis under Rule 403, the Court finds that the evidence is probative of the material purposes discussed above, and the balance of probative value versus unfair prejudice weighs strongly in favor of admitting the Prior Acts evidence.

### III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the Government's Motion *in limine* to Admit Fed. R. Evid. 404(b) Evidence [dkt 52] is GRANTED.

IT IS FURTHER ORDERED that the Government may introduce evidence of Payton's prior convictions in accordance with the Federal Rules of Evidence and subject to objection by Payton.

IT IS SO ORDERED.

Date: October 29, 2012

s/Lawrence P. Zatkoff
Lawrence P. Zatkoff
U.S. District Judge