UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.

ARTHUR PAYTON,

    Defendant-Petitioner.
_____/

Criminal Case No. 12-20043
Civil Case No. 16-10425
HON. DENISE PAGE HOOD

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE [#90];
ORDER DENYING MOTION FOR EVIDENTIARY HEARING
AND APPOINTMENT OF COUNSEL [#97];
ORDER DISMISSING CIVIL CASE NO. 16-10425;
and
ORDER DENYING CERTIFICATE OF APPEALABILITY**

On November 5, 2012, following a trial by jury, Petitioner Arthur Payton was convicted of one count of conspiracy to commit bank robbery and four counts of aiding and abetting bank robbery. Judge Lawrence P. Zatkoff, who presided over the trial, imposed a sentence against Petitioner of 60 months on Count One and 120 months on each of Counts Two through Five, all counts to run consecutive to each other for a total of 540 months. (Doc. No. 71) Petitioner filed a timely appeal of his sentence, and the Sixth Circuit Court of Appeals vacated Petitioner's sentence and remanded the case to Judge Zatkoff by order dated June 12, 2014, with a mandate issued on July 10, 2014. (Doc. Nos. 81 and 82, respectively)

After Judge Zatkoff recused himself, this case was randomly reassigned to the undersigned on October 24, 2014. (Doc. No. 86) On February 26, 2015, Petitioner's re-sentencing hearing was conducted and the Court imposed a sentence of 60 months on Count 1 and 240 months on Counts 2-5, to run concurrent with Count 1. (Doc. No. 89) Petitioner did not appeal his re-sentence, but on February 5, 2016, he filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 90) Petitioner contends that his trial and appellate counsel were ineffective. The Government filed a response, and Petitioner filed a reply. (Doc. Nos. 101 and 102, respectively) On March 11, 2016, Petitioner filed a Motion for Evidentiary Hearing and Appointment of Counsel. (Doc. No. 97) The Government has not filed a response to the Motion for Evidentiary Hearing and Appointment of Counsel, though it did state in its response to the Motion to Vacate that the Motion to Vacate "should be summarily denied without an evidentiary hearing." (Doc. No. 101, PgID 1424)

## I.   BACKGROUND

Petitioner was indicted and later convicted with respect to aiding and abetting four bank robberies during October and November of 2011 and with conspiracy to commit bank robbery. At trial, the Government introduced evidence that Petitioner organized and coordinated the robberies and that he recruited co-

defendant Nancy Barta ("Barta"), a drug-addict and prostitute, to physically rob the banks. Evidence also was introduced that Petitioner: (a) promised Barta $1,000 per bank robbed; (b) handled all of the planning for the robberies; (c) scouted the banks; established escape routes and "rendezvous" locations; (d) provided Barta with a disguise for each robbery (wig, sunglasses, large sweatshirt, gloves and a large bag); (e) dropped Barta off about one block away from the bank; (f) told Barta what to do once she was inside the bank; (g) drafted the demand notes used in the robberies; (h) reunited with Barta at the agreed upon rendezvous point where he received the money; and (i) divided up the proceeds as he saw fit.

Petitioner was twice convicted of bank robbery/aiding and abetting prior to this case. On June 2, 2004, Petitioner pleaded guilty before the undersigned to seven counts of bank robbery/accessory in violation of 18 U.S.C. §2113(a) ("2002 Robberies") and received a 120 month sentence. During a confession to law enforcement officials and his subsequent plea colloquy, Petitioner admitted that: (1) he met and recruited female drug-addicted prostitutes in need of money to rob the seven banks; (2) he met them on Michigan Avenue and/or Grand River Avenue in Detroit; (3) he told them a story to make them believe that robbing banks was not risky and promised them $1,000 for each bank robbed; (4) he drove each of the women to the banks for the robberies; (5) he provided the women with disguises;

3

(6) he gave them instructions on what to do once inside the bank; and (7) he was responsible for dividing up the proceeds between himself and each of the women. See Dkt. 52, ex. 2–4. Two of the physical bank buildings Petitioner robbed in 2002 are banks involved in this case, though they now different names.

The first of the 2002 Robberies took place less than six months after Petitioner began his term of supervised release following another conviction for substantially similar conduct in connection with six bank robberies that occurred in San Diego, California in 1993 ("1993 Robberies"). Like the women recruited for the 2002 Robberies, the women whom Petitioner recruited to execute the 1993 Robberies were drug-addicted prostitutes. Petitioner received a 120 month sentence on January 31, 1994. Following his conviction in the 1993 Robberies, Petitioner wrote to Oprah Winfrey, convincing her to put him on her show (on an episode titled "Women Coerced into Robbing Banks"). The three women Petitioner recruited for the 1993 Robberies also appeared on the show.

After Judge Zatkoff granted the Government's motion in limine to allow evidence of the 1993 and 2002 Robberies, the Government introduced such evidence at trial by way of: (1) testimony from Victor Lauria of the Novi Police Department, who testified with respect to the 2002 Robberies and Petitioner's statements made in connection with them; (2) Petitioner's signed admission and a

portion of his June 2, 2004, plea colloquy; and (3) testimony from Special Agent Brett Leatherman ("SA Leatherman") regarding the statements Petitioner made on the Oprah Winfrey show about the 1993 Robberies.

## II. LEGAL STANDARDS

### A. 28 U.S.C. § 2255

28 U.S.C. § 2255 authorizes a federal prisoner to move the district court to vacate a sentence. 28 U.S.C. § 2255(a). A defendant seeking relief under § 2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). When raising claims alleging errors of constitutional magnitude, a defendant must show that the constitutional error had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Further, relief under § 2255 requires a showing of "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. U. S.*, 417 U.S. 333, 346 (1974).

## B. Ineffective Assistance of Counsel Claim

Under the Sixth Amendment, a defendant has a right to "have the assistance of counsel for his defense." U.S. Const. Amend. VI. A defendant under the Sixth Amendment has a right to "reasonably effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court articulated a two-prong test for ineffective counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable.

*Id*. "There is a strong presumption that legal counsel is competent," *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989), and "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A "reviewing court must give a highly deferential scrutiny to counsel's performance." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). Further, "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "The

defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

### III. ANALYSIS OF § 2255 MOTION

#### A. Use of Transcripts During Jury Deliberations

As the first ground for relief, Petitioner contends that trial and appellate counsel were ineffective because they failed to object to and appeal, respectively, the jury's improper use of unadmitted transcripts during deliberations.

The Court notes that trial counsel objected to the use of the transcript during the Government's case-in-chief, when the relevant pages of the transcript were handed out to jurors to be utilized in conjunction with the playing of the recording of a conversation between Barta and Petitioner. Petitioner's counsel did stipulate that the transcript was a fair and accurate translation of the dialogue on the recording. The transcripts were collected immediately after the recording was played during the Government's case-in-chief.

When the jury asked to see the transcript during deliberations, Judge Zatkoff permitted the playing of the relevant portion of the recording and, as occurred when the recording was played during the Government's case-in-chief, the

transcripts were distributed to the jurors for their use while the recording was played. Petitioner's counsel did not renew his objection to the use of the transcripts by jurors when the recording was played during deliberations. The transcripts were collected immediately after the recording was played during deliberations.

Petitioner's argument *vis a vis* trial counsel fails for three reasons. First, Petitioner's trial counsel did object to the use of the transcripts when they were utilized at trial. Although he could have objected again during deliberations, it was not necessary that he do so. Second, in the Sixth Circuit, it is within the trial court's discretion whether to allow the jury to use transcripts while the recording is played. *See* Sixth Circuit Criminal Pattern Jury Instruction 7.17 ("Pattern Instruction 7.17"). Consistent with Pattern Instruction 7.17, the jury was instructed by Judge Zatkoff both before the admitted recording was played and at the close of trial, that the recording–and not the transcript–was the evidence. *United States v. Elder*, 90 F.3d 1110, 1129-30 (6th Cir. 1996); Sixth Circuit Criminal Pattern Jury Instruction 7.17 (committee commentary, citing *United States v. Robinson*, 707 F.3d 872, 876 (6th Cir. 1983), and *United States v. Segines*, 17 F.3d 847, 854 (6th Cir. 1994). Judge Zatkoff also instructed the jury before the recording was played during deliberations:

> I want to again remind you that the transcript is not the evidence. It is the tape recording that is the evidence. If you hear something that is different from what is on the transcript, it's what you hear that is the evidence and not what you read.

For this reason, it is highly unlikely that Petitioner would have prevailed if he had appealed the use of the transcripts while the recording was played.

Third, although Petitioner did not admit that it was his voice on the recording, both Barta and SA Leatherman testified that it was Petitioner's voice on the recording. Barta testified that she was alone with Petitioner during the entire recording, and SA Leatherman also testified that surveillance conducted during the time of the recording confirmed that Petitioner was the only person with Barta during the time of the recording. There was no evidence offered that contradicted their testimony, and the recording itself was admitted in evidence. Significantly, Petitioner did not argue at trial, nor does he argue now, that the content of the transcript is inaccurate.

The Court holds that Petitioner has not met his burden of demonstrating that trial and appellate counsel were ineffective because they failed to object to and appeal, respectively, the jury's improper use of unadmitted transcripts during deliberations.

**B.    References to Petitioner's Appearance and Statements on a 1994 Episode of the Oprah Winfrey Show**

Petitioner argues his appellate counsel was ineffective for failing to appeal Judge Zatkoff's ruling that allowed the Government to admit Rule 404(b) evidence related to a prior bank robbery conviction and statements made by Petitioner on a Oprah Winfrey Show episode about men who coerce women into robbing banks. Petitioner suggests, without any evidence or law to support his suggestion, that the reference to Oprah Winfrey had an unfair prejudicial effect (in his words, the "Oprah Effect") on–and improperly influenced–the jury because she is a celebrity. The Court is not persuaded that Judge Zatkoff had an obligation to give, or that Petitioner's trial or appellate counsel should have asked for, "a limiting instruction as to the effect and impact the celebrity of the 'Oprah Winfrey' name should carry in the minds of the jurors." (Doc. No. 102, PgID 1426 (p. 6)).

Petitioner contends that the testimony of SA Leatherman constituted "fraud" because Judge Zatkoff issued an order stating that SA Leatherman was involved in the 1993 robberies that were discussed on the Oprah Winfrey Show episode at issue.  Petitioner asserts that SA Leatherman was not a case agent with respect to the 1993 robberies and had no direct knowledge of those robberies.  Petitioner argues that SA Leatherman's testimony amounted to prejudicial hearsay because the jury was not shown the videotape of that Oprah Winfrey Show episode.

10

Petitioner indicates his belief that appellate counsel did not raise this issue because appellate counsel stated he was not being paid enough.

It is undisputed that trial counsel challenged the admission of this evidence in a motion in limine that was rejected by Judge Zatkoff. A trial court has the discretion whether to allow 404(b) to be admitted, and that decision is to be afforded "great deference." *United States v. Bell*, 516 F.3d 432, 445 (6th Cir. 2008). In order to get the district court's 404(b) ruling reversed, appellate counsel would have had to demonstrate that the district court did not employ the correct standard or apply it to the facts of the case. Judge Zatkoff issued a 12-page opinion regarding this issue, he identified the exact purposes for which the evidence was to be admitted, made a record of why the 404(b) evidence's probative value outweighed its prejudicial effect, and ruled that the jury would receive a limiting instruction, and gave an appropriate limiting instruction at trial. (Doc. No. 55, PgID 208-214)

The Court finds that Judge Zatkoff analysis was thorough and that his conclusions were consistent with the law. As his ruling is afforded great deference and an appellate court must "look at the evidence in the light most favorable to the proponent [the Government], maximizing its probative value and minimizing its prejudicial effect," *Bell*, 516 F.3d at 445 (citations and quotations omitted), the

Court concludes that appellate counsel's decision not to appeal that ruling was within appellate counsel's appropriate and effective discretion. *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (an appellate attorney "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal").

As the Supreme Court has stated, a party can "bring a *Strickland* claim based on counsel's failure to raise a particular claim, [but] it is difficult to demonstrate that counsel was incompetent." *Id.* The Court finds that Petitioner has not demonstrated that his appellate counsel was incompetent. To the contrary, Petitioner's appellate counsel successfully appealed Petitioner's sentence, resulting in a reduction of his sentence from 45 years to 20 years.

The Court is not persuaded by Petitioner's argument that allowing SA Leatherman to testify about the Oprah Winfrey Show episode without showing it constituted prejudicial hearsay–the statements that SA Weatherman relayed at trial were admissible as statements against interest. To the extent that Petitioner suggests that he was prejudiced by the episode not being shown to the jury, Petitioner is mistaken because the jurors then would have heard his voice and been able to compare it to the voice on the recording made by Barta.

The Court holds that Petitioner is not entitled to relief pursuant to Section 2255 with respect to his claim that appellate counsel should have challenged the admission of the 404(b) evidence related to Petitioner's appearance on the Oprah Winfrey Show.

### C. Unreasonable Performance of Trial Counsel

Petitioner contends that trial counsel was ineffective for failing to investigate sources to impeach Barta and Fleury. Petitioner argues that, since trial counsel repeatedly made statements and sought to impeach Barta and Fleury, he should have investigated further. Petitioner also argues that an evidentiary hearing is necessary to determine if Barta and Fleury provided false testimony regarding Petitioner, as they lied over and over and "trial counsel failed to impeach them."

The Court is not persuaded by Petitioner's argument. First, Petitioner offers no sources whom his trial counsel should have interviewed and investigated in an effort to impeach Barta and Fleury. In the absence of the identification of any sources, there were no persons trial counsel could have interviewed in furtherance of investigating Barta and Fleury. Second, the Court's review of the record, and even Petitioner's argument itself, reveals that trial counsel: (a) exerted great effort to impeach Barta and Fleury at trial; (b) cross-examined SA Leatherman about inconsistent statements made by Fleury prior to trial; and (c) suggested to the jury

during closing argument that Barta and Fleury were liars who committed the robberies themselves and blamed Petitioner. (Doc. No. 74, PgID 324-27; Doc. No. 75, PgID 588-89, Doc. No. 76, PgID 635-48, 650; Doc. No. 77, PgID 824-28, 832-43, 848-49, 852-53, 864-69, 884, 896-98, 923-26, 932-35; Doc. No. 78, PgID 1083-96)

The Court finds that there is no evidence that trial counsel failed to investigate sources to impeach Barta and Fleury.

**D.     No Demonstration that Petitioner was Prejudiced**

Even if Petitioner could satisfy the first prong of *Strickland*, he would have to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" in order to prevail on his 2255 motion. *Strickland*, 466 U.S. at 694. The Court is not persuaded that the result of the proceeding would have been different, even if any or all of Petitioner's claims had any merit.

First, Petitioner cannot shown that he was prejudiced by any of the alleged ineffectiveness of trial and appellate counsel. The evidence of his guilt was overwhelming. Most significantly, his guilt was established by: (1) the testimony of Barta and Fleury; and (2) the recording on which he discussed the robberies for which he was prosecuted and convicted.

Second, none of the following arguments or "facts" set forth by Petitioner show how he was prejudiced, even if the Court assumes all of them are accurate:

1. The Government stated or acknowledged that he never stepped foot in any of the banks the day they were robbed, nor did any witnesses ever place him in those banks;

2. Police surveillance teams never saw Petitioner at or scouting a bank, or buying disguise materials, or with Barta or Fleury at a bank;

3. No surveillance photos were taken of Petitioner;

4. No fingerprint or hand-writing analysis was conducted;

5. No voice analysis of the recording was conduted;

6. No surveillance photos were taken by the surveillance team the night the recording was made;

7. Petitioner asked for a lawyer at the time of his arrest and did not incriminate himself;

8. A Rule 29 motion was made on his behalf, challenging the lack of sufficient evidence to support the charges against him;

9. His trial counsel challenged the "pathetic and untrustworthy testimonies" of Barta and Fleury; and

10. The jury was more interested in the transcript of the recording than the recording itself.

Third, the facts of this case much more closely parallel the facts of *United States v. Scarborough*, 43 F.3d 1021, 1024-25 (6th Cir. 1994), a controlling case,

than those in *United States v. Berry*, 99 F.3d 597 (7th Cir. 1996), a case Petitioner cites but which is not binding on the Court.

In light of the strength of the proofs, the Court finds that the shortcomings of Petitioner's trial and appellate counsel, if any, did not cause Petitioner to suffer any prejudice, nor did it result in the proceedings becoming fundamentally unfair, such that "the result of the proceeding would have been different . . . but for his counsel's unprofessional errors." *Strickland*, 466 U.S. at 694.

### E. Conclusion

For the reasons set forth above, the Court denies Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255.

## IV. ANALYSIS REGARDING EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL

After filing his § 2255 Motion, Petitioner filed a motion for evidentiary hearing and appointment of counsel. The Sixth Circuit has held that:

> [W]hen a factual dispute arises in a § 2255 motion, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims *unless* the record conclusively shows that the petitioner is entitled to no relief. *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir.2007), *cert. denied*, --- U.S. ----, 128 S.Ct. 1311, 170 L.Ed.2d 127 (2008) (emphasis added). Stated another way, the court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *Id*.

*Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008).

For the reasons set forth above, the record refutes Petitioner's factual allegations, such that an evidentiary hearing is unnecessary. Petitioner has offered no evidence that would support any of his allegations. The Court denies Petitioner's motion for evidentiary hearing.

As to Petitioner's motion for appointment of counsel, "[t]here is no constitutional right to counsel in habeas proceedings." *Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005) (citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)). The Court may exercise its authority under 28 U.S.C. § 1915 and 18 U.S.C. § 3006A to provide a petitioner with a court-appointed attorney. Section 1915 allows the Court to request an attorney to represent any person unable to afford counsel. 28 U.S.C § 1915(e)(1). Section 3006A provides, "Whenever ... the court determines that the interests of justice so require, representation may be provided for any financially eligible person who ... is seeking relief under section ... 2255 ...." 18 U.S.C. § 3006A(a)(2)(B).

"Some of the factors the court should consider when making the decision to appoint counsel include the viability or frivolity of the indigent's claims, the nature and complexity of the case, and the indigent's ability to present the case." *Sellers v. United States*, 316 F. Supp. 2d 516, 522 (E.D. Mich. 2004) (denying motion for

17

counsel to pursue § 2255 motion) (citations omitted). A district court does not abuse its discretion by declining to appoint counsel in post-conviction proceedings where the issues in the case are straightforward and capable of resolution on the record. *See, e.g., Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986); *Swazo v. Wyoming Dep't of Corr. State Penitentiary Warden*, 23 F.3d 332, 333 (10th Cir. 1994); *Reese v. Fulcomer*, 946 F.2d 247, 264 (3d Cir. 1991).

In this case, the Court finds that the issues presented by Petitioner's motion were straightforward, capable of resolution on the record, and meritless. The interests of justice do not require the appointment of counsel. The Court denies Petitioner's motion for appointment of counsel.

## V. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. In order to obtain a certificate of appealability, a defendant "must make a substantial showing of the denial of a constitutional right." *Slack v. Daniel*, 529 U.S. 473, 483 (2000); 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the defendant is required to show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner, or that the issues presented were adequate to

deserve encouragement to proceed further." *Slack,* 529 U.S. at 483-84 (citation and internal quotations omitted). In other words, when a district court rejects a defendant's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability,* 106 F.3d 1306, 1307 (6th Cir. 1997).

The Court concludes that, with respect to any of the grounds asserted in his 2255 motion, Petitioner has not shown (and cannot show) that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further." *Slack,* 529 U.S. at 483-84 (citation and internal quotations omitted). For the reasons stated above, the Court finds that the issues raised by Petitioner are without merit, and it will not issue Petitioner a certificate of appealability.

## VI. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Criminal Case No. 12-20043, Doc. No. 90, filed February 5, 2016] is **DENIED.**

IT IS FURTHER ORDERED that Petitioner's Motion for Evidentiary Hearing and Appointment of Counsel [Doc. No. 97, filed March 11, 2016] is **DENIED.**

IT IS FURTHER ORDERED that the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Civil Case No. 16-10425] is **DISMISSED WITH PREJUDICE and designated as CLOSED.**

IT IS FURTHER ORDERED that a certificate of appealability not issue in this case.

s/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: November 30, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2016, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry

Case Manager