UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                    Case No. 12-20043
v.                                    Hon. Denise Page Hood

Arthur Payton.

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [#115]

On June 18, 2020, Defendant Arthur Payton ("Defendant") filed a Motion for Compassionate Release [ECF No. 115] and a supplemental brief. [ECF No. 116] After the Court granted the Government's Motion for an Extension, [ECF No. 120] the Government filed its Response on July 2, 2020. [ECF No. 121] Defendant filed his Reply on July 6, 2020.

Defendant is 53 years old. He is incarcerated at FCI Hazelton in West Virginia. [ECF No. 116] Defendant's facility comprises both FCI Hazelton and the Hazelton United States Penitentiary. FCI Hazelton has experienced at least two confirmed case of COVID-19. Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited July 8, 2020).

On November 5, 2012, a federal jury convicted Defendant of one count of conspiring to commit bank robbery and four counts of aiding and abetting bank robbery. [ECF No. 121, Pg.ID 1663] On February 7, 2013, the Court initially sentenced Defendant to (i) 60 months plus one year of supervised release for Count 1; (ii) 120 months and one year of supervised release for Count 2; (iii) 120 months and one year of supervised release for Count 3; (iv) 120 months and three years of supervised release for Count 4; and (v) 120 months and three years of supervised release for Count 5, to run consecutively. [ECF No. 79]

On remand from the Sixth Circuit, the Court reduced Defendant's sentence pursuant to Federal Rule of Criminal Procedure 35(a) for a new total effective sentence of 240 months and a term of supervised release of three years. [ECF No. 99; ECF No. 104] Defendant has served eight and a half years of a 20-year sentence. His projected release date is December 30, 2028. [ECF No. 116, Pg.ID 1560]

Defendant notes that he has taken advantage of several available programs in prison, including consistent employment with the commissary and educational courses. These programs have given Defendant tangible, employable skills. Defendant further explains that he has been promoted to a "grade one position at the Commissary," and maintained a steady relationship—eventually marrying—with Twyla Payton. [ECF No. 116, Pg.ID 1560]

On or about April 6, 2020, Defendant submitted a written request for home confinement to FCI Hazelton's warden. FCI Hazelton denied Defendant's request on April 14, 2020. Defendant's appeal of the warden's decision was denied on June 12, 2020. [ECF No. 116, Pg.ID 1567] It is undisputed that Defendant has satisfied the required administrative requirements.

Defendant primarily argues that "extraordinary and compelling" reasons exist, which warrant a reduction in Defendant's sentence. *Harrell v. United States*, No. CR 13-20198, 2020 WL 2768883, at *1 (E.D. Mich. May 28, 2020). Defendant asserts that there is sufficient precedent to grant Defendant's request and that other courts have granted similar requests when faced with analogous situations. *See Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084, at *1 (E.D. Mich. Apr. 9, 2020); *see also United States v. Atwi*, No. 18-20607, 2020 WL 1910152, at *1 (E.D. Mich. Apr. 20, 2020); *Samy v. United States*, No. CR 16-20610-1, 2020 WL 1888842, at *1 (E.D. Mich. Apr. 16, 2020); *United States v. Hansen*, No. 07-CR-00520(KAM), 2020 WL 1703672, at *1 (E.D.N.Y. Apr. 8, 2020); *United States v. McPherson*, No. CR94-5708RJB, 2020 WL 1862596, at *1 (W.D. Wash. Apr. 14, 2020).

"It is a rare case in which health conditions present an 'exceptional reason'" to allow for a defendant's release when detention is otherwise warranted. *United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008) Defendant asserts that he

3

suffers from psoriatic arthritis, gout, hypertension, osteoarthritis, borderline diabetes, and obesity, among other health issues. [ECF No. 116-3] Defendant argues that his health conditions place him in a high-risk category for COVID-19 complications. *United States v. Rodriguez*, No. 17-CR-157-VEC, 2020 WL 3051443, at *1 (S.D.N.Y. June 8, 2020) (granting compassionate release to an inmate who suffered from psoriatic arthritis and was at greater risk of contracting COVID-19). However, the Government contends that *Rodriguez* is distinguishable because the defendant only had one month left on his sentence and that the Government did not dispute the defendant's health condition, which was based on outdated CDC guidance.

Citing the Attorney General's letter on the matter, Defendant asserts that the Justice Department has promoted the expansion of home confinement as a solution to mitigate the effects of COVID-19. *See* Attorney General William Barr, *Memorandum for Director of BOP, Re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020), https://www.justice.gov/file/1266661/download.

In response, the Government argues that, although the BOP cannot entirely eliminate the risk of COVID-19, their current measures are able to minimize exposure. The Government further asserts that the BOP is increasing the number of inmates who are granted home confinement, and that Defendant's denial from the

BOP establishes that he did not meet the requisite criteria—mainly that Defendant is a risk to public safety. The Government explains that the BOP must consider legitimate concerns like whether inmates "might have no safe place to go upon release and [might] return to their criminal activities." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020).

The Government claims that the BOP must focus on inmates who have the highest risk factors for COVID-19 and are least likely to engage in new criminal activity. Although the Court agrees that Defendant's health complications place him in the high-risk category, the Court cannot guarantee that Defendant is no longer a risk to public safety. The Court is guided by Defendants past actions. As the Government indicates, this is Defendant's third sentence for the same crime, and Defendant previously violated his supervised release terms to engage in the same activity for which he was sentenced. [ECF No. 121, Pg.ID 1662]

The Government also argues that Defendant's medical condition should not qualify him for compassionate release. The Government explains that the "average" person may have a higher risk of contracting COVID-19 in prison than the public at-large, but the BOP policy requires an "individualized" assessment of an individual defendant's relative risk. *See United States v. Austin*, 2020 WL 2507622, at *4–*5 (E.D. Mich. May 15, 2020). According to the Government, that inquiry depends on the number of confirmed cases at a prison, whether and how

5

much that number may increase or decrease, the prison's medical facilities, the defendant's release plan, the threat of COVID-19 in his community of release, the defendant's access to medical care if released, and the defendant's willingness to follow conditions of release and social distancing. [ECF No. 121, Pg.ID 1675]

Here, the Government argues that the relevant factors weigh against release. The Government argues that FCI Hazelton's procedures are working, as evidenced by the fact that there has only been one confirmed case among both inmates and staff.[1] On July 13, 2020, Defendant submitted supplemental information indicating that there are now two confirmed cases of COVID-19 at FCI Hazelton and two confirmed cases at the U.S. Penitentiary at Hazelton. [ECF No. 125, Pg.ID 1894] The Government argues that the low number of confirmed cases shows that FCI Hazelton has implemented procedures to curb the outbreak.

Looking to the other factors, the Government argues that Defendant cannot be trusted to abide by any required supervised release terms or any imposed social distancing guidelines. To support this point, the Government provides an excerpt of Defendant talking with a colleague while on supervised release. The excerpt provides:

> Payton: Okay. Okay. Then this is how you do things. Now, what I'm gonna do next. I'm gonna do it regardless of their task force. You know.

---

[1] Although the Government asserts that no inmates or staff at FCI Hazelton have contracted COVID-19, Defendant indicates that one inmate has contracted it so far. The Government notes that that case occurred at the Penitentiary, which is on the same campus.

> They work eight hours a day and they got other cases. You know. I got all day to figure out ways to get around them.

[ECF No. 121, Pg.ID 1676]

The Government also argues that Defendant does not have any of the conditions that the CDC now claims increase risk factors. The Government indicates that Defendant is younger than 65. The Government also explains that the CDC acknowledged that it cannot definitively state that individuals with immunocompromised systems as a result of taking certain medications—like Methotrexate—are at an increased risk. The Court acknowledges that the CDC has already revised its risk factors once, and that information concerning COVID-19 changes rapidly. *Cameron v. Bouchard*, No. CV 20-10949, 2020 WL 2615740 *5 (E.D. Mich. May 22, 2020) (presenting expert witnesses who opined that "the CDC's list of conditions is incomplete"); *see also See Expectant Parents, Physicians, Navigating Fast-Changing Guidance on COVID-19 and Pregnancy*, Harvard School of Public Health, https://www.hsph.harvard.edu/news/hsph-in-the-news/covid-pregnancy-parents-physicians/ (last visited May 26, 2020) ("Every couple days we learn new information . . . [We've] never been so dependent on such shaky data."). And the Court does not make a finding concerning Defendant's medical status. The Court bases its decision solely on Defendant's risk to the community.

Defendant contests the Government's characterization of his health condition. Defendant points out that the Government omitted and did not discuss his hypertension or obesity. Defendant argues that the Government's argument about immunocompromised systems is speculative and unsubstantiated, as made evident by the CDC's own noncommittal language acknowledging that the CDC does not know for certain how medications that compromise immune systems may affect relevant risk factors.

Defendant counters that his risk to the community decreases with age. He asserts that the Sixth Circuit previously acknowledged that his advanced age may "diminish[] the public safety benefit of keeping [Defendant] in prison [for the length of the initial prison sentence." *See United States v. Payton*, 754 F.3d 375, 378 (6th Cir. 2014); *see also* U.S. Dep't of Justice, Office of Justice Programs, Bureau of Justice Statistics, Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010 12, NCJ 244205 (April 2014)31 (analyzing the Bureau of Justice's Statistics considering the recidivism rates of released prisoners in 30 states from 2005 to 2010, which found decreased recidivism rates as prisoners age).

The Sixth Circuit has established that district courts should consider a defendants' prior criminal history when determining whether they are a current danger to the public. *See United States v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007)

(explaining that the district court correctly considered the defendant's status as a "habitual criminal" who "continue[d] to commit crimes without let-up, both in and out of custody"). Here, the Court is faced with a similar situation. There is no doubt that bank robbery is considered a dangerous crime. *See United States v. Raftopoulos*, No. 612CR192ORL28GJK, 2020 WL 3064793, at *3 (M.D. Fla. June 9, 2020) (determining that the defendant "pose[d] a danger to public safety" because when he was released eleven years after his first bank robbery conviction, he committed the same offense).

However, the Court must consider whether Defendant has adequately shown that his strides in prison are enough evidence to outweigh his past behavior as a habitual offender when released. While the Court acknowledges that other courts have released inmates who were incarcerated for bank robbery or crimes of a similar level of dangerousness, those cases not only involve inmates who are sick, but also inmates who have significantly shorter times left on their sentences than Defendant. *See United States v. Hernandez*, No. 18 CR. 834-04 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (opining that although the defendant, who was serving time for a gang related crime, was not dangerous, the Court's decision was bolstered by the fact that the defendant only had four months' remaining on his sentence); *see also United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *6 (D. Conn. Apr. 8, 2020) (finding that the defendant, who was

serving a sentence for bank robbery, would not be a danger with only 26 days remaining on his sentence).

For the reasons stated above,

IT IS HEREBY ORDERED that the Court **DENIES** Defendant's Motion for Compassionate Release. [ECF No. 115]

|  |  |
|---|---|
| DATED:  July 24, 2020 | s/Denise Page Hood<br>United States District Judge |

!